**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| MARY BERRY-HOBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV01103 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Mary Berry-Hobbs, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 8, 11; see also Docket Entry 9 (Plaintiff's Memorandum), Docket Entry 12 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and Supplemental Security Income ("SSI"), alleging an onset date of June 15, 2012. (Tr. 245-59.)[1]

---

[1] Plaintiff did not pursue her claim for SSI beyond the application stage. (See Tr. 1-6, 89-100, 157-94, 327-29, 338-41.)

The Social Security Administration denied Plaintiff's DIB application initially (Tr. 157-65, 179-82) and on reconsideration (Tr. 166-78, 187-94), and Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 195-97). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 105-42.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act (Tr. 89-100). The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 337-41), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2017.

2. [Plaintiff] has not engaged in substantial gainful activity since June 15, 2012, the alleged onset date.

3. [Plaintiff] has the following severe impairment: rheumatoid arthritis.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] had the residual functional capacity to perform light work . . . with exceptions. She can frequently climb ladders, ropes, scaffolds, ramps/stairs, and stoop. [Plaintiff] should avoid concentrated exposure to pulmonary irritants such as dust, odors, and gases (as a precaution for her non-

2

severe asthma with tobacco abuse). She can frequently handle objects with both hands, meaning gross manipulation.

. . .

6. [Plaintiff] is capable of performing past relevant work as an optical instrument assembler, optometric assistant, operations manager (per DOT), and store manager. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform.

. . .

7. [Plaintiff] has not been under a disability, as defined in the [] Act, from June 15, 2012, through the date of this decision.

(Tr. 94-100 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

3

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard." Hines, 453 F.3d at 561
(internal brackets and quotation marks omitted). "Substantial
evidence means 'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'" Hunter v. Sullivan,
993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)). "It consists of more than a mere scintilla
of evidence but may be somewhat less than a preponderance." Mastro
v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal
quotation marks omitted). "If there is evidence to justify a
refusal to direct a verdict were the case before a jury, then there
is substantial evidence." Hunter, 993 F.2d at 34 (internal
quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal
brackets and quotation marks omitted). "Where conflicting evidence
allows reasonable minds to differ as to whether a claimant is
disabled, the responsibility for that decision falls on the

4

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

the ALJ must assess the claimant's residual functional capacity ("RFC")." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[5]

---

[4]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[5]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "[t]he ALJ failed to evaluate properly the opinion evidence of the state agency physicians, the treating nurse practitioner, and the examining orthopedist" (Docket Entry 9 at 4 (initial capitals omitted)); and

(2) "[t]he ALJ's analysis of [RFC] is legally insufficient and her RFC finding is not supported by substantial evidence" (id. at 11 (initial capitals omitted)); and

(3) "[t]he ALJ failed to consider properly [Plaintiff's] limitations in concentration caused by her medications" (id. at 13 (initial capitals omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 12 at 10-19.)

### 1. Opinion Evidence

Plaintiff first contends that "[t]he ALJ failed to follow the requirements of 20 [C.F.R. §] 404.1527 or offer good reasons for her assignment of weight to the opinions of the state agency physicians, treating nurse practitioner, and examining orthopedist." (Docket Entry 9 at 4.) According to Plaintiff, those "opinions are well supported by the medical evidence and clearly explain the limitations caused by [Plaintiff's] rheumatoid

arthritis." (Id. at 4-5.) Plaintiff's first assignment of error fails to warrant relief.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 404.1527(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference.

For example, the nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. § 404.1527(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence of record. See 20 C.F.R. § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded

significantly less weight." Craig, 76 F.3d at 590 (emphasis added).

### a. State Agency Physicians

State agency physicians Dr. Margaret Parrish and Dr. Melvin L. Clayton each opined that Plaintiff retained the RFC to perform light work with occasional handling (gross manipulation) and fingering (fine manipulation) with the left (dominant) hand, frequent handling and fingering with the right hand, and no concentrated exposure to pulmonary irritants. (See Tr. 162-63, 171-72.) The ALJ gave "great weight" to the physicians's opinions that Plaintiff remained able to perform light work, but accorded "little weight to their opinions that she could only occasionally handle and finger objects with her left hand," as "not consistent with treatment records from April 2013, when [Plaintiff] admitted that within [three] months of starting medication, her joint pain had significantly improved and that she had had no recent joint swelling," and "inconsistent with the physical examination at that visit which showed [Plaintiff] had good range of motion in all joints with no synovitis and no [metatarsophalangeal] tenderness." (Tr. 98 (internal citations omitted).)

Plaintiff faults the ALJ for "cherry pick[ing] a treatment note indicating that [Plaintiff's] joint pain improved with treatment" and "ignor[ing] medical evidence that did not comport with [the ALJ's] RFC finding." (See Docket Entry 9 at 5 (citing

10

Tr. 98).)  According to Plaintiff, she "has frequently complained of pain and swelling in her hands and wrists" (id. at 5-6 (citing Tr. 349, 357, 375, 427)), and objective evidence "revealed decreased range of motion and tenderness in [her] hands and shoulders" (id. at 6 (citing Tr. 428)).  Plaintiff further contends that the state agency physicians's opinions that Plaintiff could only occasionally handle and finger with her left hand find further support in the opinions of a treating rheumatology nurse practitioner and an examining orthopedist, who both opined that Plaintiff could handle and finger on a less than occasional basis (id. (citing Tr. 406-08, 472, 474)), as well as with Plaintiff's "uncontradicted hearing testimony" (id. (citing Tr. 127-28)).  Plaintiff's contentions fall short.

Plaintiff's charge that the ALJ cherry-picked the evidence to support her decision to discount the state agency physicians's opinions lacks merit.  The ALJ discussed Plaintiff's course of treatment for her rheumatoid arthritis in a fair amount of detail, including, as the underlined portions reflect, mentioning the four office visits Plaintiff cited as evidence the ALJ ignored:

> [Plaintiff] was diagnosed with rheumatoid arthritis in November 2011.  On examination, she had only "mild" swelling of some of the joints in her hands and only "mildly" limited range of the abduction and external rotation of her shoulders. [Plaintiff] was referred to a rheumatologist, who prescribed [Plaintiff] Methotrexate in February 2012 and a left wrist injection in April 2012.  By her alleged onset date, [Plaintiff] had responded well to her medication but had some left wrist pain and swelling, and morning joint stiffness.

<u>Examination showed she had increased warmth, swelling, and tenderness of the left wrist with decreased range of motion, but no other warmth or swelling of the small joints in her hands or any other joints. [Plaintiff] received another steroid injection into her left wrist, and was continued on Methotrexate. She was also started on Simponi injections</u>.

After only one month, [Plaintiff] reported the injection in her wrist helped tremendously, as [did] Simponi injections with her joint pain. She admitted that because of her improved symptoms, she was able to begin exercising again. While [Plaintiff] did report having some "mild" back pain, she attributed this to her increased activity and a recent fishing trip. On examination, she had "mild" synovitis in her left wrist with "mild" tenderness to palpation, which was much improved from her last visit. *[Plaintiff's] rheumatologist further noted that [Plaintiff's] arthritis was "significantly improved" from her first visit.*

[Plaintiff] did not follow up with her rheumatologist after her July 2012 visit, and also stopped taking her rheumatoid arthritis medications, allegedly due to finances. She complained of daily pain and morning stiffness as a result of being off her medications. [Plaintiff] was referred to an organization that links people without health insurance to a local network of clinics that donate their efforts to help those in financial need; however, she did not qualify because of the amount of unemployment benefits she was receiving.

[Plaintiff] did not follow up with a rheumatologist until April 2013, almost 9 months later. *Despite her lack of treatment, notes show her rheumatoid arthritis was stable, with no active synovitis on examination.* Though she had some erosion of her lunar styloids, [Plaintiff's] only complaints were of pain in her back and left hip. She had no tenderness to palpation over her joints, and had good range of motion of her shoulders, hips, elbows, wrists, knees, ankles, and feet. [Plaintiff] also had normal muscle strength throughout. She was continued on the same medications.

Thereafter, [Plaintiff] again had no follow up regarding her rheumatoid arthritis for many months. <u>In October 2013, she reported having been off her medications for approximately [three] months, with a reported increase in</u>

12

> joint pain, swelling, and stiffness. [Plaintiff] also
> reported having daily fatigue, poor sleep, and weakness.
> She was given some free samples of medication, but it
> appears she was not consistent in obtaining these
> medications, as notes show she had been out of medication
> for a month by December 2013.

(Tr. 96-97 (underlining added) (italics in original) (internal citations omitted); see also Tr. 349, 257, 375, 427.)[6]

The treatment notes on which Plaintiff relies in fact confirm the ALJ's ultimate conclusion that "[t]he longitudinal treatment records reflect [Plaintiff's] joint pains are generally well-managed with medication." (Tr. 97.) Moreover, although the ALJ specifically mentioned only an April 2013 treatment note as inconsistent with the state agency physicians's opinions (see Tr. 98), having already discussed all of the relevant evidence earlier in her decision, no need existed for the ALJ to rehash that discussion in connection with her weighing of the opinion evidence. See McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where

---

[6] The ALJ mistakenly described an October 29, 2012 office visit with family nurse practitioner Michele M. Cerra as occurring in October 2013. (See Tr. 97.) The treatment record reflects that October 8, 2013 represents the date personnel at Duke Medicine scanned the document. (See Tr. 427.) Orthopedist Dr. Gilbert G. Whitmer made a similar error with regard to the date of that office visit when discussing the evidence he reviewed prior to his examination of Plaintiff. (See Tr. 469.)

an "ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" in other parts of his analysis).

Plaintiff correctly argues that the opinions of Ms. Cerra and Dr. Whitmer each contain more restrictive limitations on Plaintiff's ability to handle and finger than the state agency physicians's opinions in that regard. (See Docket Entry 9 at 6 (citing Tr. 406-08, 472, 474).) However, for the reasons described in more detail below, substantial evidence supports the ALJ's decision to accord "little to no weight" to the opinions of Ms. Cerra and Dr. Whitmer. (Tr. 98.)

Plaintiff additionally points to her testimony regarding the functional impact of her rheumatoid arthritis on her ability to use her hands as further support for the state agency physicians's opinions. (See Docket Entry 9 at 6-7 (citing Tr. 127-28).) However, the ALJ analyzed Plaintiff's subjective complaints of symptoms and ultimately concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible . . . ." (Tr. 96; see also Tr. 97-98 (detailing "factors [that] weigh against [Plaintiff's] credibility"), and Plaintiff has not raised a direct challenge to the ALJ's analysis of Plaintiff's subjective complaints (see Docket Entry 9 at 4-14).

In sum, the ALJ did not err in her evaluation of the state agency physicians's opinions.

**b.    Family Nurse Practitioner Michele M. Cerra**

Ms. Cerra completed a medical source statement on November 2, 2012, which limited Plaintiff to less than two hours of sitting, standing, and walking in an eight-hour workday, and to rarely (defined as up to 30 minutes) lifting 10 pounds and occasionally (defined as up to two hours) lifting two pounds.  (See Tr. 406-07.) According to Ms. Cerra, Plaintiff required the ability to alternate between sitting and standing "at will," and needed more than five minutes to "stretch or walk around" when "transitioning from sitting to standing."  (Tr. 406.)  Ms. Cerra additionally opined that Plaintiff could only rarely grasp, turn objects, engage in fine manipulation, or reach.  (See Tr. 407.)

The ALJ noted Ms. Cerra's opinion "that [Plaintiff] was not capable of even sedentary work due to daily fatigue and joint swelling, pain, and stiffness."  (Tr. 98.)  The ALJ then accorded "little to no weight" to Ms. Cerra's opinion, remarking that Ms. Cerra did not qualify as an "acceptable medical source" under the regulations, and finding that Ms. Cerra's opinion lacked "consisten[cy] with treatment records from July 27, 2012 (which indicate [Plaintiff's] arthritis was significantly improved with pain reported at only 2/10 in severity); . . . from April 2013 (where [Plaintiff] reported 'significantly improved' joint pain

15

within only [three] months of starting medication and no joint swelling); and . . . from December 2013 (with [Plaintiff] reporting joint pain only 5/10 in severity)." (Id.)

Plaintiff maintains that the ALJ failed to support her decision to discount Ms. Cerra's opinion with substantial evidence for five reasons: 1) the ALJ failed to specifically address Ms. Cerra's restrictions on Plaintiff's ability to sit, stand, walk, lift, and reach (see Docket Entry 9 at 7); 2) the ALJ "selectively pulled out adverse evidence" to support her decision to discount Ms. Cerra's opinion (id.); 3) "[t]he ALJ incorrectly state[d] that [Plaintiff] did not follow up with the rheumatologist until almost nine months after the July 2012 visit" (id. at 8); 4) the ALJ "trivialize[d]" Plaintiff's complaint of pain 5/10 in severity (id.); and 5) "the ALJ suggest[ed] that [Plaintiff's] rheumatoid arthritis was asymptomatic at the [April 2013] visit [to UNC Rheumatology]" (id. at 9). None of those reasons renders the ALJ's decision to discredit Ms. Cerra's opinion unsupported by substantial evidence.

The ALJ summarized the various components of Ms. Cerra's opinion as amounting to a restriction to less then "even sedentary work," and gave that opinion "little to no weight." (Tr. 98.) Thus, absent an indication to the contrary, the ALJ gave every component of Ms. Cerra's opinion "little to no weight." (Id.) Moreover, the regulations define sedentary work as involving

16

"lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," and occasional walking and standing. 20 C.F.R. § 404.1567(a). Thus, the ALJ did address Ms. Cerra's exertional restrictions.

Plaintiff maintains that the ALJ ignored evidence that harmonized with Ms. Cerra's opinion. (See Docket Entry 9 at 7-8.) Plaintiff points to treatment records in February, May, and June 2012, which showed that she continued to experience significant pain in her hands and wrists despite her medication. (Id. (citing Tr. 350, 351, 358, 359, 362).) However, as detailed above, the ALJ discussed these treatment visits (none of which post-date Plaintiff's alleged onset date) in her opinion (see Tr. 96), but concluded that later visits showed that Plaintiff's "joint pains [we]re generally well-managed with medication" (Tr. 97). Substantial evidence supports that conclusion.

Plaintiff correctly observes that the ALJ mistakenly believed an October 29, 2012 office visit occurred in October 2013, but fails to show how that error impacted the ALJ's analysis and weighing of Ms. Cerra's opinion. (See Docket Entry 9 at 8; see also Tr. 97.) The ALJ did not base her decision to discount Ms. Cerra's opinion on the purported treatment gap between Plaintiff's July 27, 2012 visit with Ms. Cerra and Plaintiff's April 1, 2013 visit with Dr. Joanne Jordan with UNC Rheumatology. (See Tr. 98.)

17

Plaintiff complains that the ALJ "trivialize[d]" Plaintiff's report of pain in December 2013 by describing it as "only 5/10 in severity" (Docket Entry 9 at 8; <u>see</u> Tr. 98, 463), and argues that such a "level of pain is certainly consistent with a limitation to only occasional use of the hands for fingering and handling" (Docket Entry 9 at 8). However, Ms. Cerra restricted Plaintiff to <u>rarely</u> (defined as up to 30 minutes) grasping, turning objecting, engaging in fine manipulation, and reaching (<u>see</u> Tr. 407), and the ALJ apparently believed that a complaint of 5/10 pain lacked consistency with such an extreme limitation (<u>see</u> Tr. 98). Plaintiff has not shown error with regard to that conclusion.

Lastly, Plaintiff faults the ALJ for "suggest[ing] that [Plaintiff's] rheumatoid arthritis was asymptomatic" at the April 1, 2013 visit with Dr. Jordan. (Docket Entry 9 at 9.) However, the ALJ did not state or imply that Plaintiff suffered <u>no</u> rheumatoid arthritis symptoms at her April 2013 visit; rather, the ALJ correctly observed that Dr. Jordan described Plaintiff's rheumatoid arthritis as "'stable'" and noted "'no active synovitis' on examination." (Tr. 97 (citing Tr. 423).)

In short, the ALJ did not err in her evaluation of Ms. Cerra's opinion.

**c.   Dr. Gilbert G. Whitmer**

Dr. Whitmer evaluated Plaintiff on March 13, 2014, after the ALJ's hearing but before the ALJ issued her decision. (<u>See</u> Tr.

469-72.) Following his examination, Dr. Whitmer completed a medical source statement, which reflected a diagnosis of "[r]heumatoid arthritis affecting shoulders, elbows, wrists, hands." (Tr. 473.) According to Dr. Whitmer, Plaintiff had "at least mildly severe [rheumatoid arthritis] in her shoulders, moderate severe [rheumatoid arthritis] in her wrists, and mildly to moderately severe [rheumatoid arthritis] in her hands, particularly her thumbs and index and middle fingers bilaterally." (Tr. 474.) Dr. Whitmer opined that plaintiff could rarely (defined as up to 30 minutes) grasp, turn objects, and engage in fine manipulation, and could occasionally (defined as up to two hours) reach. (Tr. 474.)

The ALJ evaluated Dr. Whitmer's findings and opinions as follows:

> Two months after th[e] hearing was held, [Plaintiff's] attorney sent her for an exam with Dr. Gilbert Whitmer on March 13, 2014. [Plaintiff] complained of significantly more severe symptoms and limitations to this doctor than she did when evaluated by her treating source in December 2013. . . .
>
> Accordingly, . . . I consider the findings and opinions from Dr. Whitmer's one-time evaluation with some skepticism. Remember, [Plaintiff] was sent to this source by her lawyer after the hearing was conducted, even though she had recent treatment records in the file at the time of the hearing.
>
> . . .
>
> I . . . give little to no weight to the opinions of Dr. Gilbert Whitmer, who examined [Plaintiff] at the request of her attorney almost [two] months after th[e] hearing was held. He opined that [Plaintiff] could only rarely use her hands for grasping, turning objects or fine manipulations; could only occasionally reach overhead

19

> with her arms; had moderately severe [rheumatoid
> arthritis] in her wri[]st, and mildly to moderately
> severe [rheumatoid arthritis] in her hands. This opinion
> was rendered after only one treatment visit with
> [Plaintiff], and there is no indication that [Plaintiff]
> was taking her rheumatoid arthritis medication at the
> time of the examination, as she had not seen her
> rheumatologist in almost five months. The record
> established that, with medication, [Plaintiff's] symptoms
> are "significantly" improved.

(Tr. 97-98 (internal citations omitted).)

Plaintiff maintains that "the ALJ's rejection of Dr. Whitmer's opinion is based on improper rationales and unsupported by substantial evidence." (Docket Entry 9 at 11.) More specifically, Plaintiff challenges the ALJ's "suggest[ion] that Dr. Whitmer's opinion should be discredited because [Plaintiff's] attorney played a role in arranging the examination he performed" (id. at 9 (citing Tr. 97)), and argues that such a basis does not constitute "a legitimate reason for discounting Dr. Whitmer's clinical findings or the opinion under 20 [C.F.R. §] 404.1527" and "suggests that [the ALJ] did not fairly evaluate the report on its merits" (Docket Entry 9 at 10). Plaintiff further disputes the ALJ's statements that Plaintiff made "significantly more severe" complaints during Dr. Whitmer's examination than she had made at prior office visits (id. (citing Tr. 97)), and the ALJ's "baseless speculation" that Plaintiff "was not taking her rheumatoid arthritis medication at the time of [Dr. Whitmer's] exam" (id. (citing Tr. 98)). Plaintiff's arguments fall short.

"An ALJ may certainly question a doctor's credibility when the opinion . . . was solicited by counsel.  The ALJ may not automatically reject the opinion for that reason alone, however." Hinton v. Massanari, 13 F. App'x 819, 824 (10th Cir. 2001) (internal citation omitted); see also Tyler v. Commissioner of Soc. Sec., No. 1:13-cv-277, 2014 WL 1052627, at *4 (W.D. Mich. Mar. 18, 2014) (unpublished) ("It was entirely appropriate for the ALJ to note that [the doctor] had examined [the] plaintiff on a referral from [the] plaintiff's attorney and that the purpose of the examination was to generate evidence in support of [the] plaintiff's claims for DIB and SSI benefits.") (collecting cases). So long as the ALJ relies on other factors in addition to the source of the examination to support his or her decision to discount the opinion in question, the ALJ does not commit error. See Parks v. Colvin, No. CIV.A. 5:13-868-BHH, 2014 WL 4199055, at *14 (D.S.C. Aug. 20, 2014) (unpublished) ("The fact that the ALJ noted that [the doctor's] opinion was 'arranged and paid for by the claimant's representative' is not in and of itself error. 'The court does not foreclose the possibility that whether a medical opinion is procured by attorney referral may sometimes be a factor in the weight given to that opinion; however, that fact alone is insufficient to establish substantial evidence for discounting the [ ] opinion . . . .'") (quoting Jordan v. Colvin, No.

21

8:12-cv-01676-DCN, 2013 WL 5317334, at *7 (D.S.C. Sept. 20, 2013) (unpublished), in turn citing Hinton, 13 F. App'x at 824).

Here, the ALJ did not rely solely on the fact that Plaintiff's attorney arranged for Dr. Whitmer's examination in discounting Dr. Whitmer's findings and opinions. As quoted above, the ALJ also found that, having evaluated Plaintiff only once, Dr. Whitmer did not have an established treating relationship with Plaintiff. (See Tr. 98; see also 20 C.F.R. § 404.1527(c)(2) (including "[t]reatment relationship" as factor ALJ should consider in weighing opinions.) Moreover, the ALJ observed that Plaintiff made "significantly more severe" complaints to Dr. Whitmer than she had to two other medical providers who had treated her in the past year (Tr. 97), and substantial evidence supports that observation (compare Tr. 470 (containing Plaintiff's report to Dr. Whitmer on March 13, 2014, that she has "considerable pain, swelling, and loss of motion and strength in her shoulders, wrists, and hands"), with Tr. 463-68 (reflecting Plaintiff's report to a nurse at the Lincoln Community Health Center on December 27, 2013, of non-specific joint pain 5/10 in severity and complaints primarily of an asthma exacerbation), 421 (evidencing Plaintiff's statement to Dr. Jordan on April 1, 2013, that Plaintiff "never had very much swelling associated with her joint pain" and that "her only complaints of pain w[ere] in the back and the left hip")).

Case 1:15-cv-01103-TDS-LPA   Document 14   Filed 09/06/16   Page 22 of 31

In contrast, the ALJ's remark that "there [wa]s no indication that [Plaintiff] was taking her rheumatoid arthritis medication at the time of [Dr. Whitmer's] examination" (Tr. 98 (emphasis added)) arguably lacks the support of substantial evidence. Although Dr. Whitmer's report does not establish that Plaintiff remained current on her rheumatoid arthritis medications (see Tr. 470 (listing methotrexate and hydrochloroquine (Plaquenil) under past medical history)), a December 27, 2013 record from Lincoln Community Health Center reflects that the nurse refilled Plaintiff's methotrexate (giving three refills) and Plaquenil (giving six refills) (see Tr. 467). Further, Plaintiff testified at the hearing on January 21, 2014, that her brain fog became worse on the days she took her methotrexate. (See Tr. 130-31.) Those two pieces of evidence, when considered together, could suggest that Plaintiff remained on methotrexate and Plaquenil at the time of Dr. Whitmer's March 13, 2014 examination; thus, the ALJ (although entitled to point out the lack of confirmation of continued medicine compliance in Dr. Whitmer's report) likely should not have used the term "no indication" in discussing this matter.

Nevertheless, any overstatement by the ALJ regarding Plaintiff's medication amounts to harmless error, under the circumstances presented here. The ALJ provided three other valid reasons for discounting Dr. Whitmer's opinions (see Tr. 97-98) and therefore, excluding the medicine compliance issue, the ALJ's

23

decision to discount Dr. Whitmer's opinions remains supported by substantial evidence. See Rodriguez v. Colvin, No. EDCV 13-1357-JPR, 2014 WL 3955191, at *11 (C.D. Cal. Aug. 13, 2014) (unpublished) (noting that ALJ's discounting of doctor's opinion because of conservative level of care "may have been in error" but deeming any such error "harmless because [the ALJ] gave other specific and legitimate reasons for discounting [the doctor's] opinion" (citing Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006), and Howell v. Commissioner Soc. Sec. Admin., 349 F. App'x 181, 184 (9th Cir. 2009))); see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion [by an ALJ] unless there is reason to believe that the remand might lead to a different result").

Simply put, Plaintiff's first assignment of error does not require remand.

## 2. Function-by-Function Analysis

Plaintiff next asserts that the ALJ failed to perform a function-by-function analysis "of the seven strength demands that the Social Security Administration considers essential to determining [RFC]" or "the vocationally critical[] manipulative functions, reaching and fingering" (Docket Entry 9 at 12), in violation of Mascio v. Colvin, 780 F.3d632 (4th Cir. 2015), and

Social Security Ruling 96-8p, <u>Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"). Plaintiff acknowledges that <u>Mascio</u> "did not adopt a *per se* rule requiring remand whenever the ALJ does not perform an explicit function-by-function analysis," but posits "that the ALJ must provide enough analysis for a court to meaningfully review the ALJ's conclusions." (Docket Entry 9 at 11.) According to Plaintiff, "the ALJ provide[d] only the conclusory RFC assessment[] [that] [Plaintiff] can perform 'light' work," and [t]he only specific finding that the ALJ made – a limitation to frequent use of the dominant left hand for handling (gross manipulation) - was contradicted by every medical professional who opined on this issue." (<u>Id.</u> at 12.) Plaintiff's contentions entitle her to no relief.

RFC measures the most a claimant can do despite any physical and mental limitations. <u>Hines</u>, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. <u>See Hines</u>, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). <u>See</u> 20 C.F.R. § 404.1567. Any non-exertional limitations

25

may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit recently addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. Mascio, 780 F.3d at 636-37. The Fourth Circuit stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform

26

relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, contrary to Plaintiff's argument (see Docket Entry 9 at 11-13), the ALJ sufficiently addressed the exertional and nonexertional components of the RFC to permit meaningful review by the Court. The ALJ accorded "great weight" to the state agency physicians's opinions that Plaintiff remained capable of performing light work. (Tr. 98.) The state agency physicians, as part of their RFC determination, opined that Plaintiff could occasionally lift or carry up to 20 pounds, could frequently lift or carry up to ten pounds, could sit, stand, and walk for up to six hours in an eight-hour workday, and had no limitations in her ability to push and/or pull beyond the weight limits for lifting and carrying. (See Tr. 162, 171.) Thus, by virtue of the ALJ adopting the state agency physicians's opinions that Plaintiff remained able to perform light work (see Tr. 98), the ALJ implicitly addressed (and adopted) the physicians's exertional limitations.

Plaintiff makes no argument that the ALJ erred by failing to specifically address postural, visual, communicative, or environmental limitations. (See Docket Entry 9 at 11-13.) Regarding manipulative limitations, the state agency physicians limited Plaintiff to occasional handling and fingering with her

27

left hand and frequent handling and fingering with her right hand. (See Tr. 162, 172.)  As discussed above, the ALJ accorded "little weight" to the state agency physicians's opinions that Plaintiff could only occasionally handle and finger with her left hand (Tr. 98), and substantial evidence supports the ALJ's decision in that regard.[7]  Finally, the ALJ expressly noted Dr. Whitmer's opinion that Plaintiff could only occasionally reach overhead with her arms, but afforded that opinion "little to no weight" (id.).  As discussed above, substantial evidence supports the ALJ's decision to discount Dr. Whitmer's opinion.[8]  Given that the state agency physicians found no limitation on Plaintiff's ability to reach (see Tr. 162, 172), Plaintiff has not shown how the ALJ's further discussion of reaching in the RFC analysis could have impacted the outcome of her case (see Docket Entry 9 at 11-13).  See generally

---

[7] The ALJ gave "great weight" to the state agency physicians's opinions that Plaintiff could perform light work, and "little weight" to their opinions that Plaintiff could only occasionally handle and finger with her left hand.  (See Tr. 98; see also Tr. 162, 172.)  The ALJ did not expressly address the physicians's opinions that Plaintiff could frequently handle or finger with her right hand.  (See Tr. 162, 172.)  Even assuming that the ALJ fully credited that opinion and thus that the ALJ erred by failing to include a limitation to frequent fingering in the RFC (see Tr.95), harmless error would result.  See generally Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion [by an ALJ] unless there is reason to believe that the remand might lead to a different result").  The ALJ made an alternate, step five finding, in which she adopted the three jobs cited by the VE as available in significant numbers in the national economy – general office clerk, customer service clerk, and file clerk II – (see Tr. 100, 135-38), and none of those jobs requires more than frequent handling or fingering, see Dictionary of Occupational Titles Nos. 219.362-010, 1991 WL 671953 ("Administrative Clerk"), 299.367-010, 1991 WL 672630 ("Customer-Service Clerk"), 206.367-014, 1991 WL 671732 ("File Clerk II") (G.P.O. 4th ed. rev. 1991).

[8] Similarly, Ms. Cerra limited Plaintiff to rarely (defined as up to 30 minutes) reaching with her arms (including overhead) (see Tr. 407), but, as discussed above, substantial evidence supports the ALJ's decision to discount Ms. Cerra's opinions.

28

Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion [by an ALJ] unless there is reason to believe that the remand might lead to a different result").

In conclusion, Plaintiff's second assignment of error lacks merit.

### 3. Medication Side Effects

In Plaintiff's third and final issue on review, she claims that the ALJ did not properly consider Plaintiff's concentration difficulties caused by her methotrexate. (See Docket Entry 9 at 13-14.) In particular, Plaintiff disputes the ALJ's statement "that 'the only side effects [Plaintiff] ever complained of were dry eyes and mouth, and hair loss'" (id. at 14 (quoting Tr. 98)), and points to her report of an increase in "methotrexate cognitive side effects" at a March 2013 office visit with the Lincoln Community Health Center (id. (citing Tr. 460)). Plaintiff additionally notes her testimony that her primary care physician had recently prescribed an anti-depressant to help with Plaintiff's brain fog and emotions. (Id. (citing Tr. 132).) According to Plaintiff, the ALJ's failure to adequately account in the RFC for Plaintiff's concentration difficulties amounts to harmful error, in that the VE testified that a limitation to simple, routine, and repetitive tasks due to the side effects of medication would

29

preclude the jobs cited by the VE and relied upon by the ALJ in her alternative, step five finding. (Id.; see also Tr. 141.) Plaintiff's argument ultimately does not warrant relief.

Plaintiff correctly argues that the ALJ did not recognize Plaintiff's complaint of a "mod[erate] increase of methotrexate cognitive side effects" in March 2013. (Docket Entry 9 at 14; see Tr. 98, 460.) However, even had the ALJ fully credited that complaint, Plaintiff has not shown that one isolated report of a moderate increase in unspecified "cognitive side effects" compels the inclusion of a restriction to simple, routine, and repetitive tasks in the RFC. (See Docket Entry 9 at 13-14.) The ALJ further remarked that Plaintiff "was also exceptionally articulate during the hearing in this matter when discussing her impairments despite complaining of concentration and articulation difficulties." (Tr. 98.) Plaintiff has not challenged that observation by the ALJ. (See Docket Entry 9 at 13-14.) Furthermore, to the extent Plaintiff relies on her own testimony regarding her concentration difficulties, as discussed above, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms . . . not entirely credible" (Tr. 96), and Plaintiff has not directly disputed the ALJ's credibility finding (see Docket Entry 9 at 4-14).

In sum, Plaintiff's assertion of error with regard to her concentration difficulties falls short.

30

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 8) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be granted, and that judgment be entered for Defendant.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 6, 2016